UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YAMIL VEGA-MILLIAN,

v.                                              Case No. 8:07-cr-94-T-17AEP
                                                          8:09-cv-119-T-17AEP

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Defendant's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255.  (Doc. CV-1; CR-145). Defendant Vega-Millan is represented by retained counsel.  A review of the record demonstrates that Defendant Vega-Millan's motion to vacate must be denied.

Background

On March 20, 2007, a federal grand jury returned an indictment charging Vega-Millan and two others with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846 and 841(b)(1)(A). Doc. CR-17.1

On February 12, 2008, Vega-Millan pled guilty to Count One of the indictment pursuant to a written plea agreement. Doc. CR-103; Doc. CR-139 at 45. Vega-Millan was adjudicated guilty of Count One of the Indictment on March 24, 2008. Doc. CR-114. On June 6, 2008, Vega-Millan was sentenced to 120 months' imprisonment, to be followed by five years' supervised release. Doc. CR-132; Doc. CR-133; Doc. CR-147 at 9-10.

Vega-Millan appealed his judgment to the Eleventh Circuit on June 16, 2008. Doc.

CR-135. On October 7, 2008, the Eleventh Circuit dismissed Vega-Millan's appeal for want of prosecution because he failed to file a brief and record excerpts within the appropriate time frame. Doc. CR-144.

On January 23, 2009, Vega-Millan filed a Motion to Vacate under 28 U.S.C. § 2255. Doc. CV-1, CR-145.

Factual Background

On March 2, 2007, postal authorities were notified that a suspicious package, emitting an odor of marijuana, had been sent to co-defendant Luis Morales at his apartment in Clearwater, Florida. PSR ¶ 7. Postal authorities put the apartment on a mail watch for any future packages. Id. 8. On March 14, 2007, Morales received three packages from someone in Puerto Rico. PSR ¶ 8. Morales consented to a search of the packages, and law enforcement discovered four kilograms of cocaine in a package. Id. After agreeing to cooperate, Morales informed authorities that in exchange for $200 for each package, he was willing to receive the packages for Vega-Millan and Carlos Quinones-Monserrate containing illegal drugs. PSR ¶ 9. Morales told authorities that Quinones-Monserrate would let him know when to expect a package. Id. After the package arrived, Morales would call Quinones-Monserrate, who in turn contacted Vega-Millan to retrieve the drugs from Morales. Id.

Morales called Quinones-Monserrate to advise him that two packages had arrived. PSR ¶ 10. Quinones-Monserrate told Morales that there should have been three packages. Id. Not long after that conversation took place, Vega-Millan called Morales and told him that he would be coming by to pick up the packages. Id. Vega-Millan went Morales's apartment and picked up the two packages containing 24 bricks of cocaine weighing eight kilograms.

PSR ¶ 11. Vega-Millan was arrested while in possession of the two packages. Id. After Vega-Millan's arrest, law enforcement officers discovered 5.5 pounds of marijuana in his vehicle. Id.

## COGNIZABILITY

Vega-Millan claims in his motion that his counsel provided ineffective assistance in that he was not adequately informed when agreeing to plead guilty and during the sentencing proceedings. He claims that his plea was involuntary and his attorney was ineffective for not arguing the safety valve provision at sentencing. Doc.-CV-1 at 4-11. Ineffective assistance claims are cognizable under 28 U.S.C. § 2255. *See Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004) (ineffective assistance claims should be decided in section 2255 proceedings).

## MERITS

Vega-Millan claims that his counsel was ineffective in that his plea was not voluntary because he was not adequately informed when agreeing to plead guilty of the fact that he was facing a mandatory minimum ten year sentence, and that he should have been given the benefit of the safety valve. The record unequivocally shows that these claims are without merit.

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on

the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v.*

*Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

## Involuntary Plea

At his change of plea hearing, the Court ascertained that Vega-Millan knew he was giving up certain rights by pleading guilty. Vega-Millan affirmed his counsel had negotiated a plea agreement and went over the provisions contained within that agreement (Doc. CR-139 at 19), including having someone read it to him in Spanish. Id. at 43. The Court reviewed with Vega-Millan the rights he was forfeiting including the right to a trial (id. at 15; 44-45), the right to possess firearms and vote (id. at 35), and being represented by counsel at a jury trial with the ability to cross-examine witnesses or raise a defense including testimony on his own behalf (id. at 18-19). The Court asked about his counsel and Vega-Millan said he was satisfied with his representation. Id. at 34. Vega-Millan confirmed that he agreed to plead guilty and knew by doing so he faced a minimum mandatory sentence of ten years' imprisonment and a maximum sentence of life imprisonment. Id. at 14-15.

The Court advised Vega-Millan that the guidelines were now advisory and that the calculations were not binding on the Court. Id. at 25-25. Vega-Millan was told by the Court of the advantages the plea agreement afforded including not charging him with other known offenses, acceptance of responsibility, and the safety-valve provision. Id. at 19-22. The Court reviewed the appeal-waiver provisions. Id. at 31-33. Vega-Millan confirmed that no promises had been made to him other than what was set out in the plea agreement, that he was not promised a particular sentence, that neither he nor members of his family had been threatened, and that he was not being forced or tricked into pleading guilty. Id. at 33-34. Vega-Millan agreed that he wished to enter his guilty plea. Id. at 45. The Court then found that Vega-Millan's guilty plea was informed, knowing, and voluntary. Id. at 46-47.

This Court may rely on Vega-Millan's sworn statements during the plea colloquy. "There is a strong presumption that the statements made during the [plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). "Consequently, a defendant 'bears a heavy burden to show his statements [under oath] were false." *United States v. Ross*, 147 Fed.Appx. 936 (11th Cir. 2005) (citing *United States v. Rogers*, 848 F.2d 166, 168 (11 th Cir. 1988)). *See United States v. Ivory*, 11 F.3d 1411, 1414-15 (7th Cir. 1993) ("Statements made to the court at the time of the plea are binding, and [defendant's] current attempt to retract them does more to expose him to a prosecution for perjury than to justify the withdrawal of the plea"); *United States v. Gonzalez- Mercado*, 808 F.2d 796, 800-01 n.8 (11th Cir. 1987) (noting strong presumption that statements made during change of plea colloquy are true and that defendant should not be permitted to circumvent finality of guilty plea).

The district court has three "core concerns" regarding a Rule 11 plea colloquy: (1) ensure that the guilty plea is free of coercion; (2) ensure that the defendant understands the nature of the charges against him; and (3) ensure that the defendant is aware of the direct consequences of the guilty plea. *United States v. Monroe*, 353 F.3d 1346, 1354 (11th Cir. 2003) (citing *United States v. Lejarde-Rada*, 319 F.3d 1288, 1289 (11th Cir. 2003)). The record establishes that Vega-Millan fully understood the consequences of his guilty plea, the nature of the charges, and the penalty he faced.

Furthermore, Vega-Millan has failed to establish prejudice under *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) as he does not claim that he wishes to withdraw his guilty plea and proceed to trial. Moreover, a defendant who alleges ineffective assistance of counsel, as Vega-Millan does here, is subject to an even higher burden regarding the prejudice prong:

he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. Vega-Millan has not effectively explained or argued his ineffective assistance of counsel claim other than mistakenly claiming that his counsel did not fully inform him of what he was agreeing to when he pled guilty. Vega-Millan has presented no facts or circumstances to suggest that his guilty plea was not knowing and voluntary. In fact, the record unequivocally reflects that Vega-Millan's plea was informed, knowing, and voluntary.

Even if this Court were to find deficient performance by Vega-Millan's counsel, he is entitled to no relief because he cannot meet the prejudice prong of *Strickland.* The record in this case demonstrates the Court conducted a thorough Rule 11 plea colloquy, establishing that Vega-Millan's plea was, in fact, voluntary and that he was facing a mandatory minimum sentence of ten years. Vega-Millan has failed to demonstrate that he suffered any prejudice.

### Safety Valve Provision

During the plea colloquy the Magistrate Judge explained the safety valve provision to Vega-Millan:

. . .

THE COURT: Then, Mr. Vega-Millan, there is one additional concession negotiated in your case by which the Government says it is not going to oppose your request that you receive the benefit of what we call the safety-valve provision of the law. These concessions are important. . .

. . .

. . . .

> These concessions are included by your lawyers in hopes of getting you the best possible sentence. What I want you to understand about them is that they are not guaranteed. You may not get the benefit of one or more of these provisions. These type provisions are essentially recommendations to the Judge as to what he or she should do at your sentencing and they are not binding recommendations. . . . Possibly you will get them, possibly not. . . . If you don't get the benefit, so be it. Do you understand this is how they work, . . .

. . .

THE COURT:      And you, Mr. Vega-Millan?

VEGA-MILLAN:    Yes.

Doc. CR-139 at 21-22.

The Court further explained to Vega-Millan what could happen if he failed to cooperate fully and truthfully, that the government reserved the right to take action against him for not cooperating fully and truthfully to include reinstatement of any charges that it had agreed to dismiss, and if the government voided the plea agreement, that the government could use any information against him. Id. at 22-24. However, the Court made it clear that he could receive a "significant benefit." Id at 23. Vega-Millan indicated that he understood what the Court was relaying to him. Id. at 24-25.

The Court further explained how the sentencing process worked and that a Presentence Investigation Report would be conducted and that his lawyer would discuss

the guidelines with him. Id. at 25. The Court continued by telling Vega-Millan that he was

"looking at a mandatory minimum ten years in prison." Id. at 27. The Court then stated that,

"If you are able to avoid the mandatories, perhaps because of substantial assistance or

maybe the safety-valve provision, then your sentences will be largely determined by the

guidelines." Id. At the conclusion of the plea colloquy, the Court asked Vega-Millan if

someone had read the plea agreement to him in Spanish and if he understood it when it

was read to him, to which he replied that he did. Id. at 43.

Vega-Millan could have been awarded a two-level reduction in his sentence if he had

satisfied certain requirements, including that, "not later than the time of the sentencing

hearing, [he] [] truthfully provide[] to the Government all information and evidence [he] has

concerning the offense or offenses that were part of the same course of conduct or of a

common scheme or plan[.]" 18 U.S.C. § 3553(f)(5); see also USSG §§2D1.1(b)(6), 5C1.2.

Vega-Millan, as the person seeking the application of the safety valve provision, bears the

burden to prove by a preponderance of the evidence that he is entitled to it. "In meeting this

burden, '[t]he defendant is required to provide complete information regarding not only the

offense of conviction, but also any relevant conduct, including disclosure of information

regarding the participation of other people in the offense'". United States v. Henderson, 307

Fed.Appx. 970 (11th Cir. 2009) (citing *United States v. Salgado*, 250 F.3d 438, 459 (6th Cir.

2001)); *United States v. Salgado* 94 Fed.Appx. 142 (4th Cir. 2004) (fear of reprisal does

not create an exception to the requirements of § 5C1.2); *see United States v. Espinosa*,

172 F.3d 795, 797 (11th Cir. 1999); *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir.

1997). The disclosure requirement for the safety valve is more than a mere acceptance of

responsibility for the crime; it "is a 'tell-all' provision." *United States v. Yate*, 176 F.3d 1309,

1310 (11th Cir. 1999) (emphasis in original).

To qualify for the safety valve, therefore, Vega-Millan bore the burden of showing by his affirmative conduct that he had provided truthful information to the United States regarding his criminal conduct, and Vega-Millan wholly failed to satisfy his burden.

Section 5C1.2 places the burden on the defendant to come forward with information concerning his involvement in the offense, including information relating to the involvement of others and to the chain of the narcotics distribution. *See Cruz*, 106 F.3d at 1557; *accord United States v. Romo*, 81 F.3d 84, 85-86 (8th Cir. 1996) ("Romo had the burden to show, through affirmative conduct, that he gave the Government truthful information and evidence about the relevant crimes before sentencing."); *United States v. Flanagan*, 80 F.3d 143, 146 (5th Cir. 1996) (safety valve provision does not require the government to solicit information from the defendant); *United States v. Ivester*, 75 F.3d 182, 185 (4th Cir. 1996) (defendants seeking to avail themselves of safety valve relief bear the burden of affirmatively acting, not later than sentencing, to ensure that the Government is truthfully provided with all information and evidence the defendants have concerning the relevant crimes); *United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996) ("[T]o qualify for relief under [the safety valve], a defendant must demonstrate to the court that he has made a good faith attempt to cooperate with the authorities."); *United States v. Wrenn*, 66 F.3d 1, 3 (1st Cir. 1995) (safety valve provision "contemplates an affirmative act of cooperation with the government no later than the time of the sentencing hearing.")

Vega-Millan is not entitled to a safety valve reduction because he took no affirmative action to ensure that he truthfully provided the United States with any of the information he had regarding his offenses. Flanagan, 80 F.3d at 146 (concluding that "the burden is on the

defendant to provide the Government with all information and evidence regarding the offense. There is no indication that the Government must solicit the information.")

Vega-Millan recognized that he would not receive the benefit of the safety valve without providing cooperation to the government. The record fully supports the fact that Vega-Millan knew exactly what he was doing when he decided not to provide any cooperation in order to gain the benefit of the safety valve provision. Vega-Millan admits in his sentencing statement that, "VEGA, unlike the other two, was unable due to his own choice to engage either in the safety-valve criteria conduct or the substantial assistance program." Doc. CR-131 at 2. In the same submission, he expresses his ". . .gratitude for the generous offer of the government as well as the available option before this Court presented him, but which he has found for serious reasons unable to engage in. Defendant recognizes the applicability of the ten (10) year mandatory minimum as controlling." Id. Through this admission, it is clear that Vega-Millan also recognized the fact that he would be sentenced to a mandatory minimum ten year sentence because of his decision not to cooperate.

During the sentencing hearing, this Court noted that neither the government nor the defendant had filed any objections to the presentence report. Doc. CR-147 at 4. This Court then asked if there were any objections to the factual accuracy or as to the guidelines application by the probation office. Id. Both parties indicated that they had no objections, and this Court adopted the statements and guideline applications as its findings of fact. Id. This Court then asked if the defendant wished to make any statement or to present any information in mitigation of the sentence. Doc. CR-147 at 5. Vega-Millan's attorney stated the following in response:

MR. FERNANDEZ: Judge, I think in my sentencing statement [Doc. CR-131] which was briefed and submitted to the Court, I laid it out. I'm in the most unusual position. I'[ve] also been known to be long-winded at times, particularly during allocution at sentencing. And this time my hands are relatively tied.

One of the things that was paramount in the memo and also in my discussion with Mr. Vega was that he wanted me to convey to Your Honor and the government his gratitude for the extension both at the time of the plea agreement submission by Mr. Preston and subsequently for the opportunity to both engage in substantial assistance and also in the safety valve consideration, none of -- neither one of which he -- he chose to -- to partake in for reasons that are perhaps implicit in the brief memo. . . .

But we have no alternative based on the choices the defendant has made. . . .

Doc. CR-147 at 5-6.

The district court could not evaluate the adequacy of any proffer because he failed to provide a proffer to the United States. Vega-Millan failed to provide the United States with any information regarding his criminal activity prior to commencement of the sentencing hearing. In sum, Vega-Millan wholly failed to provide the United States with complete and truthful information regarding his criminal conduct; therefore, he failed to met his burden for safety valve relief.

Accordingly, the Court orders:

That Vega-Millan's motion to vacate (Doc. CV-1; CR-145) is denied. The Clerk is directed to enter judgment against Vega-Millan in the civil case and to close that case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal

a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on September 18, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
AUSA: James C. Preston, Jr.